*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERRY WOLFENBARGER and MARLA
WOLFENBARGER,

        Plaintiffs-Appellants,

v

FRANK WRIGHT, JR.,

        Defendant-Appellee,

and

STEVEN LEWIS,

        Defendant.

FOR PUBLICATION
February 11, 2021
9:00 a.m.

No. 350668
Monroe Circuit Court
LC No. 15-137561-NZ

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

CAVANAGH, P.J.

Plaintiffs appeal as of right orders (1) granting partial summary disposition in favor of defendant, Frank Wright, Jr., and dismissing plaintiffs' claims of trespass and nuisance, (2) denying plaintiffs' motion for leave to amend their complaint, (3) denying plaintiffs' motion for entry of a verified bill of costs, and (4) denying plaintiffs' renewed motion for remediation. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiffs purchased the property located on Foster Lane in LaSalle Township in 1990. Over the course of several years, plaintiffs planted 280 trees on their property. Defendant purchased nearby property in 1995. In approximately 2008, Steven Lewis purchased the lot west

-1-

of and adjacent to plaintiffs.[1] Because of the vastness of defendant's property interests, it appears he owned land to the west of Lewis, to the south of Lewis and plaintiffs, and to the east of plaintiffs.

According to plaintiffs, they had no issues with water on their property until after defendant constructed a new road or driveway on his property in March 2013. After that time, water started collecting in the southeast corner of their land, which killed the trees that had been planted there due to oversaturation. As of March 2015, 46 trees had died, and as of trial, 79 trees had died. Jeffrey Thierbach, an arborist, testified that all the trees on plaintiffs' land were affected in some manner. Plaintiffs also alleged that their basement started cracking after 2013. They attributed this damage to defendant's actions as well. In addition to constructing the driveway or roadway in early 2013, defendant also created a pond on his land in the latter half of 2013 that, according to plaintiffs' expert, acted to raise the level of the water table by six feet in the area. Plaintiffs alleged that this resulted in the water table now being several feet higher than the bottom of plaintiffs' basement, and another expert opined that the damage plaintiffs sustained in their basement was consistent with a high water table.

Plaintiffs filed a lawsuit against defendant, alleging claims of negligence, trespass, and nuisance. Plaintiffs' claims in the complaint were based on defendant's construction of a new road on his property and defendant's placement of a pile of dirt on his property. Plaintiffs alleged that these new features, in essence, prevented or dammed the water from leaving their property.

Defendant moved for partial summary disposition, arguing that the trespass and nuisance claims should be dismissed. Defendant maintained that although plaintiffs had listed three separate counts against defendant, the gravamen of plaintiffs' complaint was negligence. And because the claim sounded in negligence, defendant argued that plaintiffs were barred from seeking any noneconomic damages.

Plaintiffs responded, arguing that they had sufficiently alleged intentional conduct by defendant to support their claim of trespass. Plaintiffs also argued that they had sufficiently pleaded a nuisance cause of action because they alleged that their property rights had been interfered with due to defendant's actions, i.e., his building of a road and hill that increased the flow of water onto plaintiffs' property. And because these claims were separate and distinct from a negligence claim, plaintiffs maintained that they are allowable. Further, because the tort claims of trespass and nuisance were valid, plaintiffs argued, they were entitled to the recovery of noneconomic damages.

At the motion hearing, the parties argued consistently with their briefs, except that plaintiffs changed their argument with respect to the nuisance claim. Plaintiffs' counsel asserted at the hearing that the nuisance claim was based on the fact that defendant was running a large-scale commercial business on his property, which created excess noise, traffic, and dirt. The trial court noted that although defendant's motion was purportedly being brought under both MCR

---

[1] Plaintiffs' claims against Steven Lewis were settled; therefore, we refer to Wright as "defendant" in this opinion.

2.116(C)(8) and (C)(10), no evidence had been submitted, so the court was treating the motion as having been brought under MCR 2.116(C)(8). The court stated:

> I did go right to the complaint and I looked at it, and I will agree that there is one paragraph that says that this stuff was done intentionally on the trespass claim, but there's nothing else to support that allegation in the complaint in the least bit. It's just an allegation made that this was done intentional [sic] on the trespass claim and even on the nuisance claim.
>
> We look at paragraph four, which is very telling in this case, in the complaint, this matter involves damages to real and personal property owned by the plaintiffs. That is the negligence claim and that's exactly what this is, a negligence claim that something was done on the defendant's property that have [sic] impacted the plaintiffs['] property, and that's all that this case is.
>
> I said this from the beginning of this case, if this is so that the defendants [sic] did something that impacted the plaintiffs here, the Court's obligation here is remediation and bring the plaintiffs back whole. That's exactly what the *Price* [*v High Pointe Oil Co, Inc*, 493 Mich 238; 828 NW2d 660 (2013),] case says here, that's what this case is. This is a *Price* case. I am 100 percent convinced of that and the pleadings show that to this Court. It is not just sufficient in this Court's mind to merely say it was done intentionally to try to support a trespass claim or even a negligent claim, and I cannot find that.

The trial court consequently granted defendant's motion and dismissed plaintiffs' claims of trespass and nuisance. And because only the negligence claim was remaining, the court also dismissed plaintiffs' requests for noneconomic damages.

Plaintiffs moved for reconsideration. Plaintiffs argued that *Price* only addressed whether noneconomic damages were available in a negligence case—it did not state that one cannot allege claims of negligence, trespass, and nuisance simultaneously—and that other cases show it is indeed permissible to allege these claims in one complaint. Plaintiffs also averred in that motion, as well as in a separate motion for leave to file an amended complaint, that assuming they had failed to plead sufficient facts to support their claims of trespass and nuisance, they should be allowed to amend their complaint—and a proposed amended complaint was attached.

At the motion hearing, the trial court acknowledged that a party can bring claims of negligence, trespass, and nuisance in the same action. Despite this, the court ruled:

> This Court already alluded to these allegations were already in the original complaint and the Court granted Summary Disposition, which eliminated the two causes of action, which plaintiff[s] now seeks to bring back in. So, frankly, in the Court's opinion, the recourse there is the Court of Appeals, if you want those back in. It's not an amendment of the complaint. The evidence before the Court now does not justify bringing those back in. This Court has reviewed everything that has been submitted.

\* \* \*

-3-

This matter is scheduled for trial this next coming Monday and I am not going to grant the Motion to Amend the Complaint. It comes extremely way too late.

Let me point something else out to plaintiff [sic], because plaintiff [sic] is bound by everything that plaintiff [sic] files in this action, it is binding on them. I'll refer you to Plaintiff's [sic] Motion to Exempt the Case from Case Evaluation, Extend Discovery, and Extend Discovery Order, which was filed on November 23, 2015, paragraph seven of that motion states, because plaintiffs['] claims involve equitable relief, this matter should be removed from Case Evaluation as damages would insufficient/inappropriate to remedy this matter, and that should read would be insufficient/inappropriate to remedy this matter. Plaintiff [sic] has already conceded there are not those kind of damages in this case; that's the Court's position here.

I deny the Motion to Amend the Complaint.

The trial court then added that it had reviewed the motion for reconsideration and found no palpable error, and therefore, that motion was also denied. Plaintiffs sought leave to appeal in this Court, which was denied. *Wolfenbarger v Wright*, unpublished order of the Court of Appeals, entered August 2, 2017 (Docket No. 338734).

Trial started on March 26, 2018 and ended on April 2, 2018. At the close of proofs, plaintiffs moved to amend their complaint to include claims of trespass and nuisance. Plaintiffs argued that amendment was proper because it would comport with the evidence that was introduced at trial. The court denied the motion, saying, "That's the issue you took up to the Court of Appeals which stayed the prior trial. No, I'm not gonna grant that motion."

The jury returned a verdict in favor of plaintiffs on their claim of negligence. Although plaintiffs had requested a minimum of $429,850 to repair their basement and replace the trees, the jury awarded a total of $50,000 in damages.

On August 21, 2018, plaintiffs filed their verified bill of costs seeking more than $46,000 under MCR 2.625. However, plaintiffs did not serve the bill of costs on defendant. In response to plaintiffs' subsequent motion for entry of the verified bill of costs, defendant objected and argued that the failure of plaintiffs to serve defendant with the bill of costs operated as a waiver of those costs. The trial court ordered supplemental briefing on the matter. In addition to the requested supplemental materials, plaintiffs also filed a motion under MCR 2.108(E)—which allows for the extension of deadlines on account of excusable neglect—to extend the deadline for service of plaintiffs' bill of costs on defendant.

At a subsequent hearing held on the motions, the trial court stated:

I studied this long and hard. There really is no case law which deals with this issue, but I'll have to be honest with you, when the court rule [MCR 2.625] is so specifically clear that you must, you shall, do something, excusable neglect, neglect, period, does not come into play in this case. It really does not.

-4-

* * *

And I am of the opinion, and it's unfortunate in this case, the court rules do take over in this case. And it is mandatory, when you serve your bill of costs, it shall be immediately served on the other party. It was not done here. It cannot be blamed on a paralegal or anything else like that, it just was not done. And I truly believe that, and that's what the Court finds in this case.

* * *

But by failing to comply with this court rule, it does create prejudice on the part of the defendant, because the defendants [sic] have the right to rely on this, and not complying with the court rule brings about the prejudice.

I have to agree with defense in this case that the costs were not timely filed, the court rule was not properly followed, therefore, the Court is not going to allow costs in this case. It's a harsh decision. It's an unfortunate decision, but I think it's very clear in the court rules, and that's the Court's ruling.

The trial court also denied plaintiffs' motion brought under MCR 2.108(E) to extend the deadline for serving defendant with the bill of costs. The court ruled that because the requirements of MCR 2.625(F) were mandatory, MCR 2.108(E) simply was inapplicable. Accordingly, the trial court denied plaintiffs costs under MCR 2.625.

On October 24, 2018, in a postjudgment motion, plaintiffs sought equitable relief in the form of remediation. Plaintiffs argued that because defendant had been found to have altered the historic flow of water, he was required to remediate the condition. Plaintiffs included an elaborate remediation plan from their hydrologist expert. Defendant responded that such a plan was unwarranted especially when that same expert testified at trial that a simple culvert under the constructed roadway would suffice. Defendant filed a supplemental response which included a proposal from his expert to remediate the area. After a hearing on plaintiffs' motion, it appears the court concluded that defendant's installation of some culverts under the constructed roadway was adequate for the time being, but the court would revisit the issue if it was later determined that the situation was not remedied.

In a renewed motion for remediation filed on January 9, 2019, plaintiffs argued that the work defendant performed had not functioned as needed because there still was an accumulation of water on plaintiffs' property. Plaintiffs therefore requested that the court order defendant to implement the remediation plan they had previously proposed. Defendant responded and contended that plaintiffs had failed to show that the culverts did not work because the amount of water after the installation of the culverts was noticeably less than what was reported at trial. Defendant further noted that he also planned to dig a catch basin south of the constructed road and install pumps to pump the water from that basin to the drainage ditch along Dixie Highway. At a January 16, 2019 hearing, the trial court noted that the pictures plaintiffs supplied did not show the presence of any standing water. Regardless, the court opined that another hearing would be needed to determine whether defendant had successfully remediated the situation. To facilitate this decision, the court ordered defendant to hire an independent engineering firm to provide its

opinion. However, the court later vacated that order and instead scheduled an evidentiary hearing, where the parties could call their own experts and the trial court could make its determinations.

The trial court held its evidentiary hearing on May 20, 2019. After hearing the efforts defendant had undertaken—which included adding twin culverts under the road, adding a retention basin, and adding pumps to push collected water to the drain at Dixie Highway—the trial court found that defendant had successfully remediated the situation. An order approving remediation was entered on August 29, 2019, which closed the case.

This appeal by plaintiffs followed, challenging the trial court's decisions dismissing their trespass and nuisance claims, denying their request to amend their complaint regarding those claims, refusing to award costs, and holding that defendant had adequately performed remediation.

## II. TRESPASS AND NUISANCE CLAIMS

Plaintiffs argue that the trial court erred in holding that they failed to sufficiently plead trespass and nuisance claims, and thus, also erred in dismissing their claims for noneconomic damages. We disagree. Further, plaintiffs argue that the trial court abused its discretion in denying their motion to amend their complaint to add factual allegations to support their trespass and nuisance claims after they were dismissed under MCR 2.116(C)(8). We agree.

### A. STANDARD OF REVIEW

This Court is to review a trial court's decision on a motion for summary disposition de novo. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). "A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone. When a challenge to a complaint is made, the motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Id*. (citations omitted).

This Court reviews a trial court's decision regarding a motion to amend the pleadings for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 NW2d 401 (2013). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. SUMMARY DISMISSAL

#### 1. TRESPASS

"[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land . . . ." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 59; 602 NW2d 215 (1999) (quotation marks and citation omitted; alteration in original). Recovery for trespass "is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id*. at 67. Further, the intrusion must have been intentional. *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995); see also *Adams*, 237 Mich App at 66. Pertinent for this case, "[i]t is beyond dispute that a defendant's unauthorized act of causing excess waters to flow onto

another person's property constitutes a trespass." *Wiggins v City of Burton*, 291 Mich App 532, 566; 805 NW2d 517 (2011). "This is because the unauthorized flooding of another person's land constitutes 'an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession.' " *Id*. at 566-567, quoting *Adams*, 237 Mich App at 67.

In Count IV of their complaint, plaintiffs attempted to allege a count of trespass against defendant. Notably, "[c]ourts are not bound by the labels that parties attach to their claims." *Buhalis v Trinity Continuing Care Serv*, 296 Mich App 685, 691; 822 NW2d 254 (2012). Instead, "the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Id*. at 691-692 (quotation marks and citation omitted). All throughout the complaint, plaintiffs asserted that defendant caused water to flow onto plaintiffs' land as a result of defendant's building of a gravel road and placement of a large pile of dirt. Thus, these allegations appear to be sufficient to allege the intrusion aspect of the trespass claim. However, as the trial court noted, plaintiffs' allegations fail to show how this intrusion of water was intentional:

> I did go right to the complaint and I looked at it, and I will agree that there is one paragraph that says that this stuff was done intentionally on the trespass claim, but there's nothing else to support that allegation in the complaint in the least bit. It's just an allegation made that this was done intentional [sic] on the trespass claim and even on the nuisance claim.
>
> * * *
>
> It is not just sufficient in this Court's mind to merely say it was done intentionally to try to support a trespass claim . . . .

The paragraph the court was referencing is ¶ 28 of the complaint, which was the sole allegation related to any intentional conduct and provides:

> Defendant's trespass through the flow of water, and other damage to [plaintiffs'] Property were done intentionally, recklessly, and wantonly when Defendant knew that the Property and the trees belonged to Plaintiffs and that Defendant had no right to take these actions.

This paragraph, although it uses the word "intentionally," fails to properly allege that defendant intentionally caused water to flow onto plaintiffs' property. First, conclusory allegations are insufficient; they must be supported by factual assertions. *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003). Second, to the extent there was any factual allegation in this paragraph, it only showed that defendant knew that plaintiffs owned their property, including their trees. Importantly, it did not allege that defendant undertook his actions with the intent to direct water onto plaintiffs' property. Therefore, plaintiffs' complaint was

insufficient to maintain a claim of trespass, and the trial court did not err by granting defendant's motion for summary disposition on this claim.[2]

## 2. NUISANCE

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). A defendant

> is subject to liability for private nuisance for a nontrespassory invasion of another's interest in the private use and enjoyment of land if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm[,] (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Id*. at 304; see also *Terlecki v Stewart*, 278 Mich App 644, 654; 754 NW2d 899 (2008).]

In their complaint, plaintiffs alleged, with respect to the nuisance claim, that defendant's gravel road and pile of dirt creates significant water flow onto plaintiffs' property and increases water retention on the property. Notably, the thrust of the claim is that the road and pile of dirt "continue to damage" plaintiffs as a result of the dying of trees and diminution of value of the property. Such an assertion speaks more to monetary damages rather than how the possessor's enjoyment of the land was interfered with. See *Adams*, 237 Mich App at 67. Similar to what this Court stated in *Gibbons v Horseshoe Lake Corp*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2014 (Docket No. 311754), p 12, plaintiffs in this case "do not allege that the creation of the alleged nuisance was the result of anything other than defendant's alleged negligence, and cannot alternatively claim nuisance under the same facts and law as their negligence claim." Further, a nuisance claim is different from a negligence claim because nuisance is a condition on the land and not an act or failure to act. *Travers Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 346; 568 NW2d 847 (1997) (citations omitted). We agree with the trial court that there is nothing in plaintiffs' nuisance claim to distinguish it from plaintiffs' negligence claim. Accordingly, the trial court did not err by granting defendant summary disposition on this claim as well.

---

[2] The trial court's reliance on *Price v High Pointe Oil Co, Inc*, 493 Mich 238; 828 NW2d 660 (2013), is misplaced. This case is simply inapplicable for deciding whether plaintiffs properly pleaded a claim of trespass or nuisance. The only issue the Supreme Court addressed in *Price* was whether noneconomic damages were available for the negligent destruction of property, and it held that they were not. *Id*. at 240. Although the plaintiff in *Price* had initially pursued a claim of trespass, among others, the only claim that went to trial was the negligence claim. *Id*. at 241. It is unexplained why the negligence claim was the only claim to survive to make it to trial. See *id*. Thus, although *Price* addresses why plaintiffs could not seek noneconomic damages after their claims for trespass and nuisance were dismissed, *Price* does not address whether the dismissal of those claims was proper.

Further, plaintiffs do not dispute that noneconomic damages are not recoverable with a negligence claim. See *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 264; 828 NW2d 660 (2013). Therefore, with only the negligence claim surviving defendant's motion for partial summary disposition, the trial court did not err by ruling that plaintiffs were barred from recovering any noneconomic damages.

## C. LEAVE TO AMEND COMPLAINT

"A trial court should freely grant leave to amend a complaint when justice so requires." *Sanders*, 303 Mich App at 9, citing MCR 2.118(A)(2). However, a motion to amend may be denied for these reasons:

> (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. [*Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).]

The week before trial, the trial court denied plaintiffs' motion to amend the complaint, stating:

> This Court already alluded to these allegations were already in the original complaint and the Court granted Summary Disposition, which eliminated the two causes of action, which plaintiff [sic] now seeks to bring back in. So, frankly, in the Court's opinion, the recourse there is the Court of Appeals, if you want those back in. It's not an amendment of the complaint. The evidence before the Court now does not justify bringing those back in. This Court has reviewed everything that has been submitted.
>
> * * *
>
> This matter is scheduled for trial this next coming Monday and I am not going to grant the Motion to Amend the Complaint. It comes extremely way too late.
>
> Let me point something else out to plaintiff [sic], because plaintiff [sic] is bound by everything that plaintiff [sic] files in this action, it is binding on them. I'll refer you to Plaintiff's [sic] Motion to Exempt the Case from Case Evaluation, Extend Discovery, and Extend Discovery Order, which was filed on November 23, 2015, paragraph seven of that motion states, because plaintiffs['] claims involve equitable relief, this matter should be removed from Case Evaluation as damages would insufficient/inappropriate to remedy this matter, and that should read would be insufficient/inappropriate to remedy this matter. Plaintiff [sic] has already conceded there are not those kind of damages in this case; that's the Court's position here.
>
> I deny the Motion to Amend the Complaint.

Thus, it appears the trial court denied plaintiffs' motion to amend the complaint because: (1) the trespass and nuisance claims already had been dismissed by the trial court, and the avenue to resurrect those claims was through the Court of Appeals; (2) the "evidence" did not show that amendment was proper; (3) the motion to amend was too late; and (4) plaintiffs had previously conceded that (noneconomic)[3] damages were not implicated in this case.

The first reason the trial court provided is erroneous. Just because the trial court had dismissed the trespass and nuisance claims does not mean that plaintiffs could not amend their complaint to properly plead such claims. In fact, our court rules expressly allow for this. MCR 2.116(I)(5) states, "If the grounds asserted are based on subrule (C)(8), (9), or (10), the court *shall* give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." (Emphasis added.) In this instance, the grounds asserted were based on subrule (C)(8); therefore, the court was required to allow the parties an opportunity to amend the complaint under MCR 2.118, unless the amendment would be otherwise unjustified. See also *Yudashkin v Linzmeyer*, 247 Mich App 642, 651; 637 NW2d 257 (2001); *Jackson v White Castle Sys Inc*, 205 Mich App 137, 142-143; 517 NW23d 286 (1994). The trial court's mistaken belief that it was precluded from allowing the revival of these dismissed claims and that the only avenue for doing so was through this Court constitutes an error of law.[4]

The second reason the trial court provided in denying plaintiffs' motion to amend the complaint—that the "evidence" shows that amendment was not proper—can be a valid reason because a motion to amend may be denied if the amendment would be futile. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). An amendment is futile if, among other things, it is legally insufficient on its face. *PT Today, Inc v Comm'r of Office of Fin & Ins Serv*, 270 Mich App 110, 143; 715 NW2d 398 (2006).

Plaintiffs' proposed amended complaint included the following factual allegations:

- Defendant Wright is an excavator and licensed builder.

- Defendant Wright intended to materially increase the flow of water onto the Wolfenbarger property, as his construction of the roadway and depositing of the aforementioned dirt pile ensured that the flow of water onto the Wolfenbarger Property would materially increase.

- Defendant Wright's continued attempts to increase the natural historic flow of water onto the Wolfenbarger Property after being put on notice of the

---

[3] Although the trial court did not use the term "noneconomic damages," this appears to be what the court was referencing because there is no apparent significance to the purported concession that "damages" are not at issue in this case. That is because whether plaintiffs were entitled to seek noneconomic damages was a large part of defendant's motion for partial summary disposition and plaintiffs' motion to amend the complaint.

[4] And "[a] court abuses its discretion when it makes an error of law." *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 364; 824 NW2d 609 (2012).

nature of the claims in this case further demonstrates his intent in increasing the flow of water onto the Wolfenbarger Property through construction and excavation activities.

- Defendant Wright knew or reasonably should have known that constructing the gravel road in the manner in which he did, depositing the dirt pile in the location he chose, and making additional modifications to his land in the form of berms and dikes would result in a material increase to the natural flow of water onto the Wolfenbarger property.

- Defendant's trespass through increasing the natural, historic flow of water, and other damage to the Wolfenbarger Property were done intentionally, recklessly, and wantonly when Defendant knew that the Property and trees belonged to Plaintiffs and that Defendant had no right to take these actions.

- Defendant Wright intentionally and unreasonably constructed the gravel road and deposited the pile of dirt to increase the flow of water onto the Wolfenbarger property and cause significant damage to said property.

When the trial court granted defendant's motion for partial summary disposition under MCR 2.116(C)(8), it held, in pertinent part, that there were no factual allegations to support plaintiffs' conclusory assertions that defendant had acted with the intent to flood plaintiffs' property. But the factual allegations listed in the proposed amended complaint appear to have corrected this deficiency. With regard to the trespass claim, the proposed amended complaint clearly asserted that defendant made the roadway and hill of dirt, along with other modifications to his land, *with the intent to divert water onto plaintiffs' property*. And the fact that defendant is alleged to be an excavator and a licensed builder supports an inference that he would have the knowledge and ability to carry out his intentions. Therefore, amending plaintiffs' complaint in this manner for the claim of trespass was not futile or unjustified.

Further, the elements of nuisance appear to have been pleaded in the proposed amended complaint. First, plaintiffs alleged that they had property rights and privileges in the private use and enjoyment of their property. Second, they alleged that the invasion of their interest caused significant harm. Third, plaintiffs alleged that defendant's conduct was the legal cause of the invasion of their interest in the enjoyment of their land. And finally, plaintiffs alleged that defendant intended the invasion of their interest in the private use and enjoyment of their land. The fact that some facts or elements seem to overlap with the trespass claim is not surprising. See *Terlecki*, 278 Mich App at 653 ("Claims of trespass and nuisance include overlapping concepts and are difficult to distinguish."). Therefore, the amended complaint sufficiently pleaded a claim of nuisance and was not otherwise futile.

For its third reason to deny the motion to amend, the trial court stated that plaintiffs' motion was too late because it was being decided the week before trial was to start. "Undue delay" is a reason to deny a motion to amend. *Lane*, 231 Mich App at 697. But "[a]bsent bad faith or actual prejudice to the opposing party, delay, alone, does not warrant denial of a motion to amend." *Id*. The trial court's reliance on the motion being too late is somewhat perplexing. The trial court granted defendant's motion for summary disposition in an order entered on May 25, 2017.

-11-

Plaintiffs filed their motion to amend the complaint less than a week later on May 31, 2017. Clearly, plaintiffs were not *unduly* late in bringing their motion when it was brought six days after the trial court dismissed plaintiffs' claims of trespass and nuisance under MCR 2.116(C)(8).

Moreover, assuming arguendo that the amendment was unduly late, there is nothing to show that plaintiffs acted in bad faith or that defendant would have suffered any actual prejudice. Instead of acting in bad faith, it is apparent that plaintiffs were availing themselves of their right to amend their complaint to correct the deficiencies identified in the granting of defendant's motion for partial summary disposition. See MCR 2.116(I)(5). And as already described, the amended complaint did indeed correct the deficiencies in the initial complaint. Regarding prejudice, " '[p]rejudice' in this context does not mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits." *Weymers*, 454 Mich at 659. Instead, there is "prejudice" "if the amendment would prevent the opposing party from receiving a fair trial," such as "for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id*. In this instance, there is nothing to show that defendant would have been denied a fair trial if the complaint had been amended. Indeed, just two weeks earlier, plaintiffs' claims of trespass and nuisance were in existence and therefore were claims defendant had to prepare to defend against. Thus, even though defendant had a pending motion to dismiss those claims, he could not have known with certainty that he would not have to defend against them.

However, one aspect of the nuisance claim alleged in plaintiffs' amended complaint would prejudice defendant, and thus, was improper. Throughout this litigation plaintiffs had alleged that their problems resulted from the modifications defendant made to his land which caused water to flow onto and remain trapped on plaintiffs' land. But in their motion to amend the complaint, plaintiffs added an allegation that "Defendant Wright operates a business out of his property in which heavy machinery and work trucks traverse the gravel road he constructed, which unreasonably causes dust, dirt, and noise to invade the Wolfenbarger property." This allegation was a new one that arguably would prejudice defendant. With trial starting imminently, defendant would now have to investigate and gather evidence to defend against this new claim in short order. The addition of this aspect of the amended nuisance claim would hamper defendant's ability to have a fair trial. Therefore, although the motion to amend the complaint was not unduly late, and should have been granted, this specific aspect of the nuisance claim is prejudicial and should not have been allowed to proceed.

The fourth reason the trial court denied plaintiffs' motion to amend their complaint is also erroneous. The trial court stated that plaintiffs previously had conceded that damages, including noneconomic damages, were not implicated in this case. The "concession" comes from a paragraph in plaintiffs' motion to remove the case from case evaluation, which states:

> Because Plaintiffs['] claims involve equitable relief this matter should be removed from case evaluation as damages would insufficient/inappropriate to remedy the matter.

The trial court correctly noted that there appears to be a missing word "be," so that it should read "damages would *be* insufficient/inappropriate." But from context, this paragraph, even if inartfully crafted, cannot be read as a concession that there are *no* monetary (or noneconomic) damages. If

one is to take the paragraph as it is written (but with the addition of the word "be"), all it concedes is that damages are insufficient "to remedy the matter." In other words, all plaintiffs were conceding was that damages *alone* would be insufficient to make them whole. Therefore, this paragraph cannot reasonably be read as plaintiffs waiving entitlement to all damages, including noneconomic damages.

In sum, all four of the trial court's reasons for denying plaintiffs' motion to amend their complaint are erroneous, and the trial court abused its discretion by denying plaintiffs' motion. Accordingly, this matter is remanded to the trial court for further proceedings on plaintiffs' claims of trespass and nuisance as set forth in their amended complaint, but the nuisance claim is limited to the flow of water onto plaintiffs' property.

We note and reject defendant's argument raised for the first time on appeal that this Court should affirm on the alternate basis of the election of remedies doctrine and collateral estoppel. Defendant has pointed out that plaintiffs filed a malpractice complaint against their initial attorney and supposedly settled the matter. Defendant maintains that because plaintiffs chose to pursue this remedy through the malpractice action they are barred from seeking any remedy from defendant. See *Barclae v Zarb*, 300 Mich App 455, 486; 834 NW2d 100 (2013). Defendant relies on documents that are not contained in the lower court record in support of his position but this Court's review is limited to the record established by the trial court, and may not be expanded on appeal. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Further, as an error-correcting court, this Court's purpose is to determine if the trial court made an error when it rendered its decision. See *Johnson v VanderKooi (On Remand)*, 330 Mich App 506, 526; 948 NW2d 650 (2019). Because this malpractice case was not known to the trial court and in fact was not even in existence at the time the trial court made its decision, the case is wholly irrelevant to whether the trial court made a mistake when it denied plaintiffs' motion to amend the complaint.

## III. BILL OF COSTS

Plaintiffs argue that the trial court abused its discretion when it ruled that they had waived their right to costs as the prevailing party. We agree.

## A. STANDARD OF REVIEW

A trial court's decision whether to award costs under MCR 2.625(A) is reviewed for an abuse of discretion. *Fansler v Richardson*, 266 Mich App 123, 126; 698 NW2d 916 (2005). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "The construction and interpretation of court rules present a question of law that this Court reviews de novo." *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003).

## B. DISCUSSION

MCR 2.625(A)(1) provides that "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." MCR 2.625(F) describes the procedure for taxing costs:

(1) Costs may be taxed by the court on signing the judgment, or may be taxed by the clerk as provided in this subrule.

(2) When costs are to be taxed by the clerk, the party entitled to costs must present to the clerk, within 28 days after the judgment is signed, or within 28 days after entry of an order denying a motion for new trial, a motion to set aside the judgment, a motion for rehearing or reconsideration, or a motion for other postjudgment relief except a motion under MCR 2.612(C),

(a) a bill of costs conforming to subrule (G),

(b) a copy of the bill of costs for each other party, and

(c) a list of the names and addresses of the attorneys for each party or of parties not represented by attorneys.

In addition, the party presenting the bill of costs shall immediately serve a copy of the bill and any accompanying affidavits on the other parties. Failure to present a bill of costs within the time prescribed constitutes a waiver of the right to costs.

(3) Within 14 days after service of the bill of costs, another party may file objections to it, accompanied by affidavits if appropriate. After the time for filing objections, the clerk must promptly examine the bill and any objections or affidavits submitted and allow only those items that appear to be correct, striking all charges for services that in the clerk's judgment were not necessary. The clerk shall notify the parties in the manner provided in MCR 2.107.

(4) The action of the clerk is reviewable by the court on motion of any affected party filed within 7 days from the date that notice of the taxing of costs was sent, but on review only those affidavits or objections that were presented to the clerk may be considered by the court.

At the heart of this issue is the proper interpretation of the provisions of MCR 2.625(F)(2). This appears to be an issue of first impression. This subsection requires, in pertinent part, a party to "present" a bill of costs "to the clerk" within 28 days after entry of the judgment. It also requires the party to "immediately serve a copy of the bill and any accompanying affidavits on the other parties." Finally, the "[f]ailure to present a bill of costs within the time prescribed constitutes a waiver of the right to costs."

This Court interprets court rules using the "same principles that govern the interpretation of statutes." Our purpose when interpreting court rules is to give effect to the intent of the Michigan Supreme Court. The language of the court rule itself is the best indicator of intent. If the plain and ordinary meaning of a court rule's langue is clear, judicial construction is not necessary. [*In re McCarrick/Lamoreaux*, 307 Mich App 436, 446; 861 NW2d 303 (2014) (citations omitted).]

-14-

It is not disputed that plaintiffs timely filed their bill of costs with the clerk. It also is not disputed that plaintiffs failed to serve the bill of costs on defendant. The question is: What result is imposed by the court rules for this failure to "immediately" serve the bill of costs? The trial court ruled that because service was to be done immediately, it was part of the presentment, and the failure to immediately serve resulted in a waiver. We disagree.

Under the plain language of the court rule, "the party entitled to costs must *present to the clerk*" the bill of costs within 28 days after the judgment is signed. MCR 2.625(F)(2) (emphasis added). Thus, this requirement is clear that the costs must be presented *to the clerk* within the prescribed timeline. Again, there is no dispute that the costs were filed or presented to the clerk within the 28-day period.

However, "[i]n addition, the party presenting the bill of costs *shall* immediately serve a copy of the bill and any accompanying affidavits on the other parties." MCR 2.625(F)(2) (emphasis added). The use of the word "shall" denotes mandatory action. See *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). Consequently, plaintiffs' failure to immediately serve the bill of costs on defendant is undoubtedly noncompliance with this portion of the rule.

But whether that noncompliance results in a waiver is another question. The court rule only provides for *one* instance of a party waiving the right to costs and that is the party's "[f]ailure to *present* a bill of costs within the time prescribed." MCR 2.625(F)(2) (emphasis added). We do not believe that the failure to *serve* defendant constitutes a failure to *present*. The court rule uses the terms "present" and "serve" differently. The reference to "present[ing]" is in the context of presenting to the clerk. See MCR 2.625(F)(2) ("[T]he party entitled to costs must present to the clerk . . . ."). Nowhere does the court rule refer to serving the bill of costs on the opposing party as a "presentment" of the bill of costs. Indeed, the sentence "In addition, the party presenting the bill of costs shall immediately serve a copy of the bill and any accompanying affidavits on the other parties" clearly shows that "presentment" is separate from "serving." That is apparent with the use of the phrase "[i]n addition," which conveys that the requirement of immediately serving the other parties is an *additional or extra* requirement to the presentment requirement. Therefore, because the court rule only provides for a waiver upon the failure to timely present the bill of costs, it should not be read to also allow for waiver for failing to satisfy *other* aspects of the court rule.

A well-established rule of statutory construction is *expressio unius est exclusio alterius*, which means "the expression of one thing is the exclusion of another." *US Fidelity & Guar Co v Amerisure Ins Co*, 195 Mich App 1, 5-6; 489 NW2d 115 (1992). And in the context of statutory interpretation, it "means that the express mention of one thing in a statute implies the exclusion of other similar things." *Id*. at 6. Thus, with the court rule expressly mentioning that the failure to timely "present" results in a waiver of the right to costs, it does not follow that the failure to comply with other aspects of the rule also constitutes waiver. If the Supreme Court had intended for other failures to result in waiver, it could have said so. Likewise, if the Supreme Court had desired for "service" to constitute a type of "presenting," then it could have used language to convey that principle, such as, "In addition, the party presenting the bill of costs shall present them to the other parties by immediately serving a copy of the bill and any accompanying affidavits on them." In that instance, the failure to "present" would encompass both presenting to the clerk and presenting to the other parties.

Therefore, under the court rule, only the failure to present a bill of costs to the clerk within the time prescribed constitutes a waiver of the right to costs. Because plaintiffs did timely present the bill of costs to the clerk, this waiver provision simply is inapplicable. Although plaintiffs failed to comply with the requirement of immediately serving the bill of costs on the opposing party, that failure does not constitute a waiver under the plain language of the court rule, and the trial court erred when it ruled otherwise. Accordingly, we reverse that decision and remand for further proceedings. The issue whether the trial court also abused its discretion when it denied plaintiffs' motion brought under MCR 2.108(E), to allow them to extend the deadline for serving defendant, is moot and need not be addressed. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

## IV. REMEDIATION

Plaintiffs argue that the trial court erred in concluding that defendant had remediated the water situation on plaintiffs' property. We disagree.

## A. STANDARD OF REVIEW

When reviewing equitable actions, this Court reviews the ultimate decision de novo, but any findings of fact are reviewed for clear error. *Webb v Smith*, 204 Mich App 564, 568; 516 NW2d 124 (1994). A trial court's findings are clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

## B. DISCUSSION

In plaintiffs' complaint, they also sought equitable relief in addition to damages. Although the jury returned a verdict in favor of plaintiffs in the amount of $50,000, this award or remedy only addressed the monetary damages plaintiffs had sustained up until the time of trial. Consequently, plaintiffs wanted defendant to remediate his property such that the water drained the same way it did before defendant made the modifications to his property.

After conducting an evidentiary hearing, the trial court found that defendant had sufficiently remediated the premises. Specifically, the trial court noted that it was not accepting, i.e., believing, everything that plaintiffs' experts stated. This Court defers to a trial court's credibility determinations. *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016); see also *H J Tucker & Assoc, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 563; 595 NW2d 176 (1999) ("This Court gives special deference to the trial court's findings when they are based on its assessment of the witnesses' credibility.").

The trial court also found that the situation was successfully remediated for a couple of reasons. The court first noted that the solution of adding a culvert under the road is precisely the solution plaintiffs' expert suggested at trial. This was correct because plaintiffs' civil engineer, Steven Sorensen, testified at trial that the solution to this drainage issue was to add a culvert under the road to let the water in the area "equalize to where it historically was." Although this was the solution Sorensen had suggested, it does not conclusively mean that defendant successfully remediated the situation. If the "fix" did not correct the problem, despite this being what plaintiffs' expert suggested, then it cannot be said that defendant had restored the area to how it functioned before he made the 2013 modifications.

Regarding the effectiveness of defendant's remediation, the court found that it was fully effective. This finding is not clearly erroneous. Evidence was presented that even before the road was constructed, there was no positive outlet for water in that area to drain, but now there were multiple positive outlets, including (1) the twin culverts (which were sloped to drain from plaintiffs' property to defendant's), (2) a ditch leading to Foster Lane, and (3) pumps and pipes were added to move water to Dixie Highway. In support of the effectiveness of these modifications, evidence was presented that within a day or so after a big rain now, the area is dry. The evidence showed that even before the road was constructed, the area flooded to some degree; however, after the road was constructed the flooding would last a very long time—up to six weeks. Consequently, with the water now vacating the area within a day or so after serious rains, we are not definitely and firmly convinced that the trial court erred in its finding.

In summary, the trial court did not err by granting defendant's motion for summary disposition on plaintiffs' counts of trespass and nuisance, but the trial court abused its discretion when it denied plaintiffs' motion to amend the complaint before trial. The trial court erred when it determined that plaintiffs' failure to serve defendant with the bill of costs resulted in a waiver of the right to those costs under the court rule. And the trial court did not clearly err by finding that defendant's remediation efforts successfully restored the area to how it drained before the road was constructed.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron

-17-